UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM J FRENCH,
SANDRA M FRENCH,

          Plaintiffs,

                              Case No. 20-cv-1090-bhl

  v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,
NORTHWESTERN LONG TERM CARE INSURANCE CO,

          Defendants.

## DECISION AND ORDER

      If the phrase "tax-qualified, guaranteed renewable, comprehensive, long-term care insurance policy" were any more impenetrable, it might be mistaken for an excerpt from *Finnegan's Wake*. But this Joycean jumble of surplus adjectives means a great deal to the millions of—predominantly elderly—Americans who rely on such policies for medical support. Take, for example, Plaintiffs William and Sandra French. In 2007, they purchased long-term care insurance policies from Defendant Northwestern Long-Term Care Insurance Company, a wholly owned subsidiary of Northwestern Mutual Life Insurance Company (collectively NML). Although neither Plaintiff required daily assistance at that point, they anticipated long, happy lives, and wanted to lock in reasonable premiums early. They reveled in the belief that they had done so, until May 2018 when, after 11 years of punctual payments, NML increased their annual rates by over $4,000.

      According to Plaintiffs, this substantial rate increase represented the final step in a decades-long scheme whereby NML collected premiums from forethoughtful customers, with no intention of fulfilling its corresponding obligations. They contend that the rate increase was designed to drive policyholders off their plans and relieve NML of its duty to provide the benefits those policyholders had paid for over the years. Consequently, the Frenches hired counsel and filed this class action lawsuit. NML answered, denying Plaintiffs' claims and raising the Filed Rate

Doctrine as an affirmative defense. It then moved for judgment on the pleadings based on this defense. After firing their lawyers, Plaintiffs responded to NML's motion *pro se*, and the motion is now fully briefed. Because the Court concludes that the Filed Rate Doctrine bars Plaintiffs' claims, NML's motion will be granted.

## FACTUAL BACKGROUND[1]

In August 2007, while living in Texas, Plaintiffs purchased tax-qualified, guaranteed renewable, comprehensive, long-term care insurance policies (QLTCI) from Defendant Northwestern Long-Term Care Insurance Company, a wholly owned subsidiary of Northwestern Mutual Life Insurance Company. (ECF No. 1 at 2.) Before selling a new QLTCI policy in Texas, an insurer must submit a Rate Filing to the Texas Department of Insurance (TDI). (*Id*. at 14.) The TDI reviews the submission, which includes an Actuarial Memorandum, Actuarial Certification, the policy form, and other relevant materials, to determine if the proposed policy and its design comply with governing law. (*Id*.) The QLTCI policies that Plaintiffs purchased were issued on policy form "RS-LTC.(1101)." (ECF No. 24 at 9.) NML filed that form and its associated premium rate schedules, and the TDI initially approved them for sale on March 28, 2002. (ECF No. 1 at 14.) The first page of the policy stated: "This long-term care policy is guaranteed renewable for life upon timely payments of premiums for the life of the Insured and can neither be cancelled nor have its terms, *other than premiums*, changed by the Company. Premiums may be changed by class." (ECF No. 24 at 9) (*italics* added.) The premium rates as approved by the TDI differentiated among policyholders based on age, benefit period, and other appropriate factors. (*Id*. at 10.)

In 2016, NML filed a request with the TDI for a premium rate increase on the RS-LTC.(1101) policy series. (*Id*.) The 2016 Rate Increase was approved by the TDI on February 9, 2018. (*Id*. at 11.) NML sought a substantial average rate increase of 86%, but the TDI, following its review of NML's submissions, approved only a 62% average rate increase. (*Id*. at 11.) The TDI requested—and NML provided—an implementation plan and final rate schedules for the 2016 Rate Increase, which included the applicable percentage increases by benefit period

---

[1] These facts are drawn from Plaintiffs' complaint (ECF No. 1) and Defendants' memorandum in support of their motion for judgment on the pleadings (ECF No. 24) to the extent that the latter invokes documents incorporated into the pleadings by reference. *See United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *Schilke v. Wachovia Mortg., FSB*, 820 F.Supp.2d 825, 835 n. 4 (N.D. Ill. 2011) (taking judicial notice of an insurer's state rate filings).

and age.  (*Id*. at 11.)  On May 2, 2018, NML advised Plaintiffs that, effective August 8, 2018, each Plaintiff's Annual Premium of $6,679.30 would increase by $4,285.70.  (ECF No. 1 at 2.)  This increase was in accordance with the 2016 Rate Increase approved by the TDI and as per the implementation plan NML provided to the TDI.  (ECF No. 24 at 11.)

## RULE 12(c) STANDARD

NML raises the Filed Rate Doctrine as an affirmative defense and has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) based on that defense.  (ECF No. 24 at 2).  This is procedurally correct.  The Seventh Circuit has confirmed that Rule 12(c) is "the appropriate vehicle for resolving an affirmative defense." *Gunn v. Continental Casualty Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

In resolving a Rule 12(c) motion, the Court applies the same standard as the more-typical Rule 12(b)(6) motion to dismiss. "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).  "When a [party] moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position[.]" *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).  Therefore, the Court must "view the facts in the complaint in the light most favorable to the nonmoving party," but it "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

## ANALYSIS

Plaintiffs bring four claims.  The first three are common law claims for:  breach of contract, breach of the covenant of good faith and fair dealing, and common law fraud.  Plaintiffs' fourth claim is for alleged violations of the Texas Deceptive, Unfair, and Prohibited Practice in the Business of Insurance Act.  Plaintiffs seek to certify national classes on the first three claims and a Texas subclass on the fourth.  NML argues the Texas Filed Rate Doctrine precludes all four claims.

## I. Texas Law Governs the Court's Analysis of Plaintiffs' Claims.

Plaintiffs filed this case in federal court pursuant to the Court's diversity jurisdiction and 28 U.S.C. §1332(d), the Class Action Fairness Act. (ECF No. 1 at 4.) In support of their motion, Defendants argue that Texas law applies to Plaintiffs' claims. (ECF No. 24 at 9-10.) The Frenches, proceeding without the benefit of counsel, call Defendants' invocation of state law "remarkable" and suggest federal law, in the form of the Internal Revenue Code, applies. (ECF No. 32 at 2.) Contrary to Plaintiffs' suggestion, all four of the claims raised in the complaint are state-law claims. Plaintiffs' Texas Deceptive, Unfair, and Prohibited Practice in the Business of Insurance Act is obviously a Texas statutory claim. And there is no federal cause of action for Plaintiffs' common law breach of contract, breach of the implied duty of good faith, or common law fraud claims.

As a federal court exercising its diversity jurisdiction, the Court must apply Wisconsin's choice of law rules to determine which state's laws apply to Plaintiffs' common law claims. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("When a federal court hears a case in diversity . . . it applies the choice-of-law rules of the forum state to determine which state's substantive law applies."). Under Wisconsin law, "the 'first rule' in the choice-of-law analysis is 'that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance.'" *In re Jafari*, 569 F.3d 644, 649 (7th Cir. 2009) (quoting *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶40, 290 Wis. 2d 642, 714 N.W.2d 568 (2006)). In the insurance context, when a policy does not include a choice-of-law provision, Wisconsin applies the "grouping-of-contacts" approach, which "provides that insurance coverage is 'determined by the law of the jurisdiction with which the contract has its most significant relationship.'" *Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc.*, 2016 WI 14, ¶14, 367 Wis. 2d 221, 876 N.W.2d 72 (Wis. 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶26, 251 Wis. 2d 561, 641 N.W.2d 662 (Wis. 2002)).

Following this approach, NML argues that Texas law applies to all of Plaintiffs' claims because Texas has the most significant relationship to Plaintiffs' insurance policies. (ECF No. 24 at 9-10.) The Court agrees. The QLTCI policies were issued and delivered in Texas, where Plaintiffs resided at the time. (ECF No. 1 at 2.) Plaintiffs received them on a Texas policy form that had been filed with and approved by the Texas Department of Insurance (TDI). (*Id*. at 14.)

And the increased premium rates that prompted this suit only existed because of TDI assent. (*Id.* at 19.) Therefore, under Wisconsin choice-of-law principles, the Court must apply Texas law.

## II. Under Texas Law, Rates that Are Filed and Approved by a State Agency May Not Be Challenged in Court.

NML argues that the Filed Rate Doctrine, as adopted under Texas law, bars all four of Plaintiffs' claims. Under Texas law, "[t]he filed rate doctrine bars "judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Texas Comm'l Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005) (citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986)). The Texas Supreme Court has explained that the doctrine applies "when state law creates a state agency and a statutory scheme under which the agency determines reasonable rates for the service provided." *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002); *see also Alexander v. Glob. Tel Link Corp.*, 816 F. App'x 939, 943 (5th Cir. 2020) ("the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies").

The doctrine serves two purposes. First, it "prevents regulated companies from engaging in price discrimination between customers ('nondiscrimination')[.]" *Winn v. Alamo Title Ins. Co.*, 2009 WL 7099484, at *4 (W.D. Tex. 2009), *aff'd*, 372 F. App'x 461 (5th Cir. 2010). Second, it "preserves the exclusive role of regulatory agencies in approving rates" and keeps "courts, which are far less competent to perform this function, out of the rate-making process ('nonjusticiability')." *Id*. The first principle deputizes the regulator to protect the consumer from the regulated company; the second protects the regulator from the courts. Courts have recognized that the Filed Rate Doctrine applies to bar challenges to insurance rates. *Korte v. Allstate Ins. Co.*, 48 F.Supp.2d 647, 651 (E.D. Tex. 1999) (doctrine is "equally applicable to the insurance industry as to other industries where a state agency determines reasonable rates pursuant to a statutory scheme"); *see also Winn*, 7099484 at *5 (listing numerous instances of federal district courts applying the Filed Rate Doctrine to actions against insurers subject to comprehensive regulations).

### A. Plaintiffs' Claims Fall Directly Within the Ambit of the Filed Rate Doctrine.

Under Texas law, the TDI has exclusive jurisdiction over long-term care insurance rate schedule increases on policies issued in Texas. *See e.g.*, Tex. Ins. Code Ann. §1651.056(a), (b) ("The commissioner may disapprove a long-term care premium rate that is not actuarially justified or does not comply with standards established under this chapter or adopted by rule by the

commissioner."). Thus, it is the TDI's job to determine whether rate increases are actuarially justified, adequate, and reasonable in relation to the benefits provided to policyholders. *See* Tex. Ins. Code Ann. §1651.055(a)(1)(B) (enabling statute); 28 Tex. Admin. Code §3.3831(c) (establishing standards applicable to premium rate increases for any long-term care policy or certificate delivered or issued for delivery in Texas on or after July 1, 2002). And Texas' comprehensive regulatory scheme requires insurers to obtain TDI's approval for any long-term care insurance premium rate increases prior to notifying policyholders. 28 Tex. Admin. Code §3.3832(c)(2)(A) (requiring insurers to file with the TDI prior to notifying policyholders, outlining detailed requirements surrounding the actuarial submissions that must be provided to the TDI in connection with rate increase filings, and providing for the TDI's continued oversight of the implementation of any such rate increases).

NML filed a request for a premium rate increase on the RS-LTC.(1101) policy series with the TDI in 2016, and, two years later, the TDI approved an average rate increase of 62%. (ECF No. 24 at 10-11.) Following approval, NML submitted an implementation plan and final rate schedules. (*Id*.) Then, effective late 2018, NML raised Plaintiffs' premiums in exact accordance with the TDI-approved rate increase and filed implementation plan. (*Id*.) This is precisely the type of process the relevant regulatory statutes contemplate.

### B. Plaintiffs' Arguments Against Application of the Filed Rate Doctrine Are Unavailing.

Notwithstanding well-established Texas law embracing the Filed Rate Doctrine, Plaintiffs insist that the Texas insurance regulator's rating decision should be afforded no weight and does not bar their claims. Plaintiffs offer four arguments against application of the Filed Rate Doctrine. They contend the doctrine does not bar their claims because: (1) NML misled the Department; (2) the IRS Code forbade the Department from granting NML's request; (3) the *Sierra-Mobile* Doctrine prevents Defendants from invoking the Filed Rate Doctrine in this case; and (4) Plaintiffs are not directly challenging NML's rates. None of these arguments carries the day for Plaintiffs.

#### 1. Plaintiffs Cannot Evade the Filed Rate Doctrine by Alleging One or More Misrepresentations.

Plaintiffs' first argument attempts to bootstrap a policy critique into a legal standard. They contend that because NML lied to regulators, the Filed Rate Doctrine should not apply. This argument has long been rejected as an exception to the doctrine.

The United States Supreme Court first recognized the Filed Rate Doctrine in *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156 (1922). In doing so, it explained the balancing of interests inherent in the doctrine, including the weighing of the risks of deceit, conspiracy, and regulatory error against the benefits of unlimited judicial intervention. Based on this balancing, the Court concluded that agency deference was the preferable approach. *See*, *e.g.*, *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000) (applying the Filed Rate Doctrine even where reviewing agencies "rarely exercise their muscle and thus give no meaningful review to the rate structure"); *Coll v. First American Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (applying the Filed Rate Doctrine in a case where the insurer allegedly bribed the insurance commission to set the rates); *In re Penn Title Litig.*, 648 F.Supp.2d 663, 674-75 (E.D. Pa. 2009) ("as long as the regulatory scheme requires the filing of rates with a governmental agency that has legal authority to review those rates, the filed rate doctrine applies regardless of the actual degree of agency review of those filed rates").

Defendants insist there is no reliable evidence indicating that NML concealed policy characteristics to mislead the TDI as Plaintiffs allege. (ECF No. 24 at 18.) But the Court need not resolve that factual dispute. Even if plaintiffs were correct on the facts, those facts would not justify abandoning the Filed Rate Doctrine. Texas courts have made clear that the doctrine is not subject to equitable considerations. *See Peacock v. AARP, Inc.*, 181 F.Supp.3d 430, 439-40 (S.D. Tex. 2016) (applying the Filed Rate Doctrine to claims that the approved insurance fee was unlawful); *Zamber v. Am. Airlines, Inc.*, No. 4:20-CV-00114-O, 2020 WL 3163037 at *10 (N.D. Tex. 2020) (barring claims that premiums were artificially inflated by kickback schemes). Plaintiffs may find this objectionable, but they have chosen the wrong venue to air their grievances. If a disgruntled baseball player finds the infield fly rule unreasonable, he does not petition the plate umpire for redress; he takes his complaints to the MLB Playing Rules Committee. Similarly, if a Texas insurance policyholder disagrees with Texas' application of the Filed Rate Doctrine or the power it affords the TDI, their recourse sits in the Texas Capitol in Austin, not a federal courthouse in Milwaukee.

### 2. The IRS Code Did Not Forbid the TDI from Approving NML's Rate Increase.

Plaintiffs next argue that the Internal Revenue Code prohibits the TDI from approving NML's requested rate increase because the Code permits rate changes only on the basis of a single, national class. This argument fails because it is premised on a misreading of applicable law.

By the policy's terms, NML could only alter QLTCI premiums "by class." (ECF No. 24 at 9.) This is consistent with 26 U.S.C. §7702B(g)(2)(A)(i)(I), which incorporates the National Association of Insurance Commissioners' (NAIC) Long-Term Care Insurance Model Regulation §6. A. (2), providing:

> The term "guaranteed renewable" may be used only when the insured has the right to continue the long-term care insurance in force by the timely payment of premiums and when the insurer has no unilateral right to make any change in any provision of the policy or rider while the insurance is in force and cannot decline to renew, except that rates may be revised by the insurer on a class basis.

NAIC Long-Term Care Ins. Model Reg. §6.A.(2). Accordingly, a policy premium revision cannot discriminate; whatever its effect, a change must have that effect on the entire class of policyholders.

Plaintiffs contend that, as a matter of law, NML is entitled to just one, national QLTCI class. (ECF No. 1 at 9.) Based on this premise, they insist that NML breached its contracts when it petitioned the TDI for a premium rate increase on only the RS-LTC.(1101) policies, and the class of plaintiffs who owned those policies is therefore entitled to equitable relief and statutory damages.

To justify their novel "one class" theory, Plaintiffs meet the lawyer in his domain—linguistic and statutory interpretation. (ECF No. 35 at 10-14.) They ultimately conclude that the use of the singular term "class" rather than plural "classes" in the adopted NAIC Model Regulation means that only a single premium QLTCI class may exist under federal law. (ECF No. 1 at 8.) Of course, the phrase "on a class basis" implies, not a hard limit, but rather a bare minimum of one. If just one of four classes has their premiums adjusted, that adjustment is nevertheless done "on a class basis." And a plural formulation, "on a classes basis," creates syntactic absurdity. The TDI's approval of the rate increase is thus consistent with federal law.

Further, the Court is not inclined to substitute its judgment for that of the state regulator. The McCarran-Ferguson Act provides that:

> Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. §1011. Additionally:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business or insurance, or

>which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]

*Id.* at §1012(b).

Congress was silent as to the definition of a QLTCI class in 26 U.S.C. §7702B. Yet Plaintiffs propose a novel reading of that statute over the interpretation adopted by the TDI pursuant to its duties under Texas law. The McCarran-Ferguson Act is fatal to such an attack on state law. If, in 1996, the national legislature had meant to uproot the settled role of the states and state regulators in construing and regulating insurance policies in 51 jurisdictions, it would not have transmitted that intention via cipher. If the elephant in the U.S. Capitol building represented a fundamental restructuring of national insurance regulation, Congress would not have jammed that elephant into a mousehole. *See Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). Simply put, there is no good reason to accept Plaintiffs' reading of §7702B over that of the TDI, and this Court will not do so.

### 3. Plaintiffs' Attempt to Trump the Filed Rate Doctrine with the *Sierra-Mobile* Doctrine Is Unavailing.

Plaintiffs next argue that the *Sierra-Mobile* Doctrine prevents application of the Filed Rate Doctrine to the present case. The *Sierra-Mobile* Doctrine arises from two 1956 Supreme Court decisions: *United Gas Co. v. Mobile Gas Corp.*, 350 U.S. 332 (1956), and *Federal Power Comm'n v. Sierra Pacific Power Co.*, 350 U.S. 348 (1956). In broad strokes, it stands for the proposition that a regulated entity may not unilaterally modify a privately negotiated contract by filing a new tariff with the regulator but must instead obtain the buyer's consent. *See Richmond Power & Light v. FPC*, 481 F.2d 490, 493 (D.C. Cir. 1973). More specifically, the *Richmond Power & Light* Court found that, where a privately negotiated utility contract provided that a customer's rate would be changeable only in a specific manner, the *Sierra-Mobile* Doctrine worked to preserve the integrity of that private agreement, and a unilateral filing with the state regulator would not suffice. *Id*.

Here, NML does not directly negotiate rates with its customers. It submits proposals to the TDI, which approves or denies the rates. Moreover, the contracts Plaintiffs signed explicitly contemplated unilateral premium changes by class. (ECF No. 24 at 9.) In essence, preserving the integrity of Plaintiffs' contracts means *permitting* NML to unilaterally petition the TDI for

premium rate increases. NML is not running an "end around" to avoid the terms of its contracts as the defendants in *Mobile Gas Corp.* and *Sierra Pacific* did; it is effectuating the very terms Plaintiffs agreed to. Therefore, the *Sierra-Mobile* Doctrine has no applicability to this case.

### 4. Even if Plaintiffs are Not Directly Challenging NML's Premium Rates, the Filed Rate Doctrine Bars Their Claims.

Finally, Plaintiffs argue that the Filed Rate Doctrine is inapposite because their claims challenge, not the rates themselves, but the illicit behavior that precipitated those rates. As with the prior three challenges, this one also fails to justify an exception to the Filed Rate Doctrine.

The Filed Rate Doctrine "bars not only claims that 'directly attack a filed rate' but also claims that 'effectively implicate the validity of the rates,' including claims purportedly 'seeking to recover for substantially illegal overcharges' . . . ." *Zamber*, 2020 WL 3163037 at *10 (quoting *Winn*, WL 7099484 at *9). When claims "'clearly rest on the amount paid by Plaintiffs for . . . insurance, effectively implicating the validity of the rates,'" it is no defense to assert that Plaintiffs are not attacking the filed rates directly. *Peacock*, 181 F.Supp.3d at 441 (quoting *Winn*, WL 7099484 at *9); *see also Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (awards of damages that would result in judicial determine of reasonableness of a rate is prohibited under the Filed Rate Doctrine); *Roussin v. AARP, Inc.*, 664 F.Supp.2d 412, 416 (S.D.N.Y. 2009) ("Although the claims are styled as claims of breach of fiduciary duties and gross negligence, Roussin essentially seeks relief for an injury allegedly caused by her payment of her AARP health care premiums.").

Plaintiffs request recission, disgorgement, restitution, and the creation of a constructive trust to remedy NML's "unjust enrichment." (ECF No. 1 at 45.) To the extent that these remedies do not directly challenge the filed rate, they nevertheless prohibit NML from charging the TDI's approved rate, and they require the Court to find the approved rate invalid. This indirect attempt to overturn the regulator's decision is equally unacceptable under the Filed Rate Doctrine.

### CONCLUSION

Lawyers and judges, perhaps more so than any other classes of professionals, possess the unique ability to persuade themselves of their expertise on matters in which they have scarcely meddled. The Filed Rate Doctrine is a self-imposed check on a court's instinct to usurp the role of the regulator. This case presents the perfect opportunity for such judicial modesty. The Court will not accept Plaintiffs' invitation to second-guess the TDI. Accordingly, Plaintiffs' attempt to

clothe their filed rate challenges in other garb is ineffective. Having reviewed the record and considered the law, the Court finds that Defendants are entitled to judgment on the pleadings.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 23) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 5, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge